**Slip Op. 10-89**

## UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WILFRAN AGRICULTURAL INDUSTRIES, INC.,<br><br>Defendant. |

**Before: Gregory W. Carman, Judge**

Court No. 07-00231

[*Service of process was proper and established jurisdiction over Defendant.*]

<u>Tony West</u>, Assistant Attorney General; <u>Jeanne E. Davidson</u>, Director, and <u>Patricia M. McCarthy</u>, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (<u>Roger Allen Hipp</u>), for Plaintiff.

August 11, 2010

### OPINION & ORDER

**CARMAN, JUDGE:**  The government filed suit against Wilfran Agricultural Industries, Inc. ("Wilfran") seeking to recover penalties and duties for violation of section 592 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592. (Doc. No. 4: First Amended Complaint ("Compl.") ¶ 1.)  Proof of service was filed on October 31, 2007. (Doc. No. 7 ("Service Affidavit").)  Wilfran did not answer the complaint, and the Clerk of Court entered Wilfran's default on February 12, 2008. (Doc. No. 22.)  During the course of reviewing the government's subsequent motion for the entry of default judgment (Doc.

No. 23), the Court found the record unclear as to whether process was properly served upon Wilfran.

Proper service of process being essential for the Court to exercise personal jurisdiction, the Court requested briefing of the issue.  The government submitted a memorandum of law (Doc. No. 27 ("First Service Mem.")), accompanied by a sworn declaration by government counsel which supplemented the Service Affidavit with additional facts regarding service of process upon Wilfran ("Service Decl.").  In response to a request by the Court for supplementary briefing, the government also submitted a supplemental memorandum of law.  (Doc. No. 30 ("Suppl. Service Mem.").)  Defendant did not answer the complaint or submit any papers.

Having reviewed the record and the law, the Court determines that Plaintiff's service of process upon Defendant was proper under USCIT Rule 4.  The Court thus may properly exercise personal jurisdiction over Defendant.

F<small>ACTUAL</small> B<small>ACKGROUND</small>

I.      <u>Service of Process</u>

In the Service Affidavit filed by Plaintiff's counsel on October 31, 2007, counsel indicated that, on October 26, 2007, "I personally delivered copies of the summons and first amended complaint" to the home of William W. Franks, who, "[a]ccording to records maintained by the Pennsylvania Department of State . . . is the president of

Wilfran." (Service Affidavit at 1.) The facts surrounding the service of process,

described in the Service Affidavit and elaborated upon in the Service Declaration, are as

follows.

Counsel could not confirm the current validity of the home address of Mr.

Franks or office address of Wilfran listed on the Pennsylvania Department of State

Records, but was able to determine Mr. Franks's home and business addresses "[b]ased

upon online searches." (Service Decl. at 1-2.) Counsel went to Mr. Franks's home

address and left a copy of the summons and complaint with Mr. Franks's wife, Anne

Franks, who identified herself and accepted the papers. (Service Affidavit at 1, Service

Decl. at 2.) Counsel then "also personally delivered copies of the summons and

complaint to Mr. Franks at his place of business," where "Mr. Franks refused to accept

delivery." (Service Affidavit at 1.)

Counsel states that when he arrived at Mr. Franks's place of business, "I

informed the employee who greeted me at the door that I had a personal delivery for

William Franks." (Service Decl. at 2.) Counsel was then escorted to the desk of a man

who identified himself as Mr. Franks. (Id.) Counsel states, "I identified myself and

stated that I was serving the summons and first amended complaint upon Wilfran."

(Id.) When counsel tried to hand a copy of the papers to Mr. Franks, Mr. Franks

"refused to accept the papers." (Id.) Mr. Franks informed Plaintiff's counsel that "his

wife had telephoned him to tell him that I had given her" copies of the papers, then

"told me that he considered me to be trespassing, and that if I did not leave the

premises immediately, he would telephone the police."  (<u>Id.</u> at 2-3.)  Plaintiff's counsel

states, "I placed the papers in my briefcase and left the premises."  (<u>Id.</u> at 3.)

On November 15, 2007, Mr. Franks, through counsel, filed a motion to intervene

in this suit.  (Doc. No. 8 ("Mot. to Intervene").)  The motion noted that the government

intended to satisfy any judgment obtained against Wilfran by filing a separate action to

collect that judgment from Mr. Franks.  (<u>Id.</u> at ¶ 3 (citing Doc. No. 6, Notice of Filing of

Amended Complaint).)  Mr. Franks argued that he would therefore face "potential

liability should judgment be entered against Wilfran," which allegedly could not

adequately represent Mr. Franks's interests because it has "no assets" and

"discontinued its business operations in April 2000 and has been liquidated."  (<u>Id.</u> at

¶¶ 4, 5.)  Mr. Franks's counsel asserted that "Plaintiff filed its First Amended Complaint

in this action on October 26, 2007, <u>and served it on Wilfran Agricultural on the same

date</u>."  (<u>Id.</u> ¶ 7 (emphasis added).)  Counsel attached Mr. Franks's proposed "Answer to

the First Amended Complaint" to the motion to intervene.  (<u>Id.</u>, Attach. 6.)  That answer

asserted the affirmative defenses that Plaintiff's complaint failed to state a claim upon

which relief could be granted and failed to name an indispensable party (Mr. Franks).

(Id., Attach. 6 at 2.)  The motion was denied by order entered December 13, 2007.  (Doc.

No. 13.)

   Mr. Franks thereafter filed a letter with the Court, dated January 27, 2008.  (Doc.

No. 19 ("Franks Letter").)  Mr. Franks's letter (which was unsworn) stated, in relevant

part:

> I will attempt to clarify Wilfran's position to defend or not to
> defend itself, and to raise a related question involving
> [government counsel]'s inclusion of William W [sic] Franks on
> an amended complaint, as he accuses William Franks of
> "operating Wilfran as his 'alter ego' and [sic] severally liable to
> the US...."
> . . .
> Wilfran did not conduct business from William Franks'
> residence, the address listed as Wilfran's "principal address"
> on the complaint.
> . . .
> Almost three years after the Treasury Department had
> concluded their [sic] investigation and removed William
> Franks from the matter, saying "no further action will be taken
> against him;"[1] and 8 years after Wilfran ceased to exist,
> [government counsel] Roger Hipp arrived at the home of
> William and Anne Franks to serve suit against Wilfran.
> Several days later, Mr. Hipp sent a Notice of Filing through the
> US Postal Service, against William Franks as Wilfran's "alter

---

[1] It is undisputed that Customs determined that Mr. Franks did not personally violate 19 U.S.C. § 1592, and informed him by letter that Customs would not pursue penalties against Mr. Franks personally.  The letter from Customs, dated March 17, 2005, is attached to the Franks Letter.  Although Mr. Franks was initially named as a Defendant in this suit, on October 26, 2010 Plaintiff amended its complaint to remove Mr. Franks as a defendant, and the Clerk of Court issued a new summons.  Plaintiff's counsel purportedly served Mr. Franks that same day.

> ego" with Wilfran's "principal address" listed as William
> Franks' home.

(Id. at 1-3 (emphasis added).)

## II.   Mr. Franks's Status as Corporate Officer

On October 29, 2007, government counsel saved Wilfran's business entity record

from the Pennsylvania Department of State website as a permanent document. (Service

Decl. at 1.)  That record lists Wilfran's status as active as of October 29, 2007, and

provides a single corporate officer, "William W. Frank" [sic], listed with the title of

"President."  (Id., Attach.)

In the Franks Letter, Mr. Franks stated that Wilfran "was closed eight years ago,

in April or May of 2000.  Acting on advice from [an attorney], Wilfran simply stopped

doing business.  [The attorney] advised that . . . Wilfran would cease to exist in

approximately three years time."  (Franks Letter at 1.)  Attached to the Franks Letter

was a copy of a declaration by Mr. Franks, dated December 1, 2003, in which he stated

that he "was President of Wilfran . . . .  [which] discontinued operations in April 2000

and has been liquidated."  (Franks Letter, Attach. 2 at ¶¶ 1, 3.)

### DISCUSSION

The question here is whether Plaintiff's counsel succeeded in bringing Wilfran

within this Court's jurisdiction by personally attempting to hand the summons and first

amended complaint to Wilfran's president, who refused to accept the papers.

Answering yes, the Court holds that the exercise of personal jurisdiction over Wilfran in

order to consider Plaintiff's motion for entry of a default judgment is proper.

## I.       Contentions of the Parties

        Plaintiff contends that its counsel satisfied the requirements of USCIT Rules

4(g)(1)(A) & 4(d)(1), as well as Pa. R. Civ. P. 424, when its counsel handed a copy of the

papers to Mr. Franks, Wilfran's president, on October 26, 2007.[2]  (Service Mem. at 2,

Suppl. Service Mem. at 2, 3 n.1.)  Plaintiff argues that Mr. Franks did not defeat service

by refusing to accept the documents when government counsel attempted to hand them

over.  Plaintiff admits that it has located no Pennsylvania case directly on point.  (Suppl.

Service Mem. at 2.)  While citing Pennsylvania cases that establish that an individual

cannot defeat service by knowingly refusing to accept papers from a process server

(Service Mem. at 2-4), Plaintiff could locate no Pennsylvania case explicitly extending

---

        [2] Plaintiff admits that counsel's service of the summons and first amended
complaint on Anne Franks at the Franks's home did not establish jurisdiction.  (Suppl.
Service Mem. at 3 ("we are not contending that service of process occurred when we
delivered the papers to Mr. Franks's home and left them with his wife."))  This is
consistent with the bar on substituted service in Pa. R. Civ. P. 424 (quoted infra) and the
interpretation in a Pennsylvania court decision which has been accepted as the standard
rule by a leading treatise on the Pennsylvania Rules of Civil Procedure.  Dunham v.
Gen. World Sales & Serv., Inc., 87 Pa. D. & C. 605 (Pa. Ct. Comm. Pleas, Montgomery
County 1953) (holding that service on corporate officer's wife at family home did not
establish jurisdiction over corporation under materially equivalent prior Pennsylvania
rule) (cited in 2 Goodrich Amram 2d § 424:3 (2010)).

that principle to service on a <u>corporation</u> (Suppl. Service Mem. at 2).  Plaintiff asserts,

however, that "[t]here is no reason to believe that Pennsylvania courts would depart

from what appears to be a universal American rule that service is accomplished when

the person to be served refuses personal delivery of process."  (Suppl. Service Mem. at 2

(citing cases).)

     Plaintiff also argues that the Franks Letter acknowledges that Mr. Franks

received notice of service and that government counsel went to the Franks's home to

serve the lawsuit, and, by discussing the case in detail, reveals that Wilfran received

actual notice of the contents of the lawsuit.  (Suppl. Service Mem. at 4-5.)

     Defendant has not taken part in these proceedings, although all filings after the

summons and complaint have been served upon the corporation's president pursuant

to USCIT R. 5.

## II.   <u>Relevant Service Rules</u>

     Proper service of the summons and complaint under the relevant procedural

rules is required before a federal court may exercise personal jurisdiction over a

defendant.  <u>United States v. Ziegler Bolt & Parts Co.</u>, 111 F.3d 878, 880 (Fed. Cir. 1997)

(citing <u>Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.</u>, 484 U.S. 97, 104 (1987)).  The

USCIT Rules govern whether service is proper in a case before this Court, but the Court

may also look to interpretations of analogous Federal Rules of Civil Procedure for

guidance due to their similarity.  Id. at 880 and footnote 1.

The USCIT Rules state, in relevant part, that the summons and complaint in an

action may be served upon a corporation in a judicial district of the United States as

follows:

> (A)    in the manner prescribed by Rule 4(d)(1) for serving an
>        individual or
>
> (B)    by delivering a copy of the summons and the
>        complaint to an officer, [or] a managing or general
>        agent . . . .

USCIT R. 4(g)(1).  The "manner . . . for serving an individual" referred to in USCIT

R. 4(g)(1)(A) permits service by "following state law for serving a summons in an action

brought in courts of general jurisdiction in the state where service is made[.]"  USCIT R.

4(d)(1).  The law of the forum of service here requires, in relevant part, service to be

effected by "handing a copy to . . .  an executive officer, partner or trustee of the

corporation," and bars service upon an adult at the recipient's abode ("[s]ubstituted

service").  Pa. R. Civ. P. 424.[3]

---

[3] Pennsylvania law appears not to require domestic corporations to designate an
agent for service of process or to accept service via the Pennsylvania Department of
State.

## III.   Service Was Proper Under USCIT Rule 4(g)(1)(B)

### A.   Service of Process Was Proper Here

The effect of a corporate officer's refusal to accept service of the summons and

complaint on behalf of a corporation under USCIT R. 4(g)(1)(B) appears to be a question

of first impression in this Court.[4]  Plaintiff has not identified, and the Court has not

located, a prior CIT case in which a corporate officer refused to accept the summons

and complaint during attempted service.

The Court holds that government counsel's actions, as described in the Service

Decl. and Suppl. Service Decl., constituted proper service of process upon Wilfran

under USCIT R. 4(g)(1)(B).  Government counsel attempted to hand the summons to

Mr. Franks, who had identified himself and who knew government counsel's purpose

was to serve a lawsuit on Wilfran.  In the face of Mr. Franks's refusal to accept the

papers and threat to call the police if government counsel did not leave immediately,

---

[4] Prior CIT decisions regarding service of process have resolved issues such as whether grounds exist to extend the time for service of process (see United States v. Rodrigue, 33 CIT ___, 645 F. Supp. 2d 1310 (2009) and United States v. World Commodities Equip. Corp., 32 CIT ___, 2008 Ct. Intl. Trade LEXIS 31 (2008); whether service of process may be made upon a lawyer for the party where the lawyer is not authorized to accept service, and whether continued participation in the litigation waived the defendant's objection to that service (see United States v. Ziegler Bolt and Parts Co., 19 CIT 507, 883 F. Supp. 740 (1995), aff'd Zeigler, 111 F.3d 878); and whether a New York corporation was properly served where the corporate officer who accepted service of process had purportedly ceased working for the corporation prior to service (see United States v. W. Weber Co., Inc., 25 CIT 490, 146 F. Supp. 2d 910 (2001)).

counsel need not have attempted to physically compel Mr. Franks's acceptance.  See Dai

Nippon Printing Co., Ltd. v. Melrose Pub. Co., Inc., 113 F.R.D. 540, 544 (S.D.N.Y. 1986)

(upholding service under Fed. R. Civ. P. 4 and N.Y. Civ. Prac. L. § 311 where the process

server went to the address on defendant corporation's stationery and spoke to an officer

who "was uncooperative and refused to accept what the process server had told him

were 'legal papers for the corporation'" because "[t]he process server acted reasonably

when she left the process on the receptionist's desk . . . and clearly attempted to comply

with the law" and defendant could not "rely on technicalities" to defeat service.)  The

Court finds that, in the present circumstances, government counsel's actions satisfied

USCIT R. 4(g)(1)(B), permitting service "by delivering a copy of the summons and the

complaint to an officer" of the defendant corporation.

### B.    The Court Is Persuaded That No Other Concerns Militate Against Finding Valid Service of Process

#### 1.    Due Process

The Court does not believe that any constitutional Due Process issues were

created when government counsel returned the service papers to his briefcase, rather

than attempting to physically compel Mr. Franks to accept them.  Due Process concerns

might have arisen if government counsel's actions were insufficient to give Wilfran

sufficient notice regarding the lawsuit—if, for example, government counsel had

deprived Wilfran of actual knowledge of the contents of the lawsuit by failing to leave

the papers on Mr. Franks's desk or the floor of his office.[5]  Such is not the case here,

however.  Government counsel not only informed Mr. Franks of the nature of the suit as

he served the papers, but Mr. Franks's detailed discussion of the contents of the first

amended complaint in both his motion to intervene and in the Franks Letter makes

plain that Wilfran received actual knowledge not only of the existence of the lawsuit,

but also of the specific contents of the complaint.

2.      Mr. Franks's Role As President of Wilfran at the Time of Service

Although the Court notes that neither Wilfran nor Mr. Franks have directly

contested Mr. Franks's suitability as a recipient of process,[6] it is worth taking a moment

to address Mr. Franks's unsworn assertions that Plaintiff's counsel did not attempt to

serve him until "8 years after Wilfran ceased to exist."  (Franks Letter at 3.)  It might be

---

[5] See, i.e., Kmart Corp. v. County of Clay, 711 N.W.2d 485, 489 (Minn. 2006) (contrasting plaintiffs's insufficient service by mere deposit of papers on the outside of the homes of the defendants with the proper service in Nielsen v. Braland, 119 N.W.2d 737 (1963) (where "defendant was in close proximity to the processor server, was touched with summons, and the summons was laid in a place easily accessible to him") and Carlson v. Cohen, 223 N.W.2d 810 (1974) (where plaintiff placed the papers "under the windshield wiper of a defendant's car as the defendant attempted to evade service in the driveway of her home")).

[6] To the contrary, Mr. Franks's counsel stated, in support of Mr. Franks's motion to intervene, that the government had served Wilfran on October 26, 2007—implying that Mr. Franks viewed the purported service of Wilfran on that date as valid.  (Mot. to Intervene at ¶ 7.)

inferred from this statement that Mr. Franks was not the president of Wilfran, and

therefore was an improper subject for service upon Wilfran, in October 2007.

The Court rejects this notion because it accepts as reliable the sworn Service

Affidavit of Plaintiff's counsel and the accompanying record of the Pennsylvania

Department of State, indicating that Wilfran remained an active Pennsylvania

corporation when counsel attempted to hand the summons and amended complaint to

Mr. Franks in October 2007.  (<u>See</u> Service Decl. Attach.)  Mr. Franks's letter and

declaration do not adequately refute the Service Affidavit and Department of State

record; while Mr. Franks assumes that Wilfran ceased to exist as a result of having

ceased operations, he provides no factual basis for that conclusion.

IV.     <u>Service of Process Under Pennsylvania Law</u>

While Plaintiff argued that service of process in this case was also proper under

Pennsylvania law, Plaintiff conceded that it could find no Pennsylvania case directly

addressing the precise issue of whether service is effective where a corporate officer

refuses to accept personal delivery of the papers and the process server does not leave

the papers in the corporate officer's immediate vicinity.  The Court's own research has

also failed to turn up any applicable Pennsylvania cases.  The Court therefore declines

to advance a novel interpretation of Pennsylvania law, and rests instead on the validity

of service under the USCIT Rules.  <u>See</u> <u>Baja Devs. LLC v. Loreto Partners</u>, 2010 WL

1758242 at *8 (D. Ariz. 2010) (declining to consider whether service complied with state

law where personal service was made upon a corporate officer pursuant to Fed. R. Civ.

P. 4(h)(1)(B), the Federal Rule of Civil Procedure parallel to USCIT R. 4(g)(1)(B)).

## CONCLUSION

For the foregoing reasons, the Court holds that, under USCIT R. 4(g)(1)(B),

Plaintiff properly served the summons and amended complaint upon Wilfran when

government counsel attempted to deliver the papers to Mr. Franks at his workplace on

October 26, 2007.  It is therefore

**ORDERED** that the stay of Plaintiff's Motion for Default Judgment is vacated.


                                                                 /s/Gregory W. Carman
                                                          Gregory W. Carman, Judge

Dated:    August 11, 2010
                New York, NY

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of  the  court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____        By: _____
                                                              Deputy Clerk